**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

OLEVIA BETHUNE,

Plaintiff,

v.

**HONORABLE SEAN DUFFY,**
In his official capacity as Secretary,
U.S. Department of Transportation,

Defendant.

Case: 1:26-cv-01904 JURY DEMAND
Assigned To : Upadhyaya, Moxila A.
Assign. Date : 6/1/2026
Description: Employ. Discrim. (H-DECK)

# COMPLAINT FOR EMPLOYMENT DISCRIMINATION, FAILURE TO ACCOMMODATE, AND RETALIATORY CONSTRUCTIVE DISCHARGE OF WHISTLEBLOWER

Plaintiff, Olevia Bethune, appearing pro se (self-represented), respectfully files this Civil Complaint against the Defendant, Hon. Sean Duffy, in his official capacity as Secretary of the U.S. Department of Transportation, alleging unlawful employment discrimination, intentional failure to accommodate protected medical conditions, and retaliatory constructive discharge (forced/coerced retirement) of a whistleblower under federal statutory law, including the Rehabilitation Act of 1973, Title VII of the Civil Rights Act of 1964, and the Whistleblower Protection Act.

## I. JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et

RECEIVED
JUN 0 1 2026
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

seq., the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791 et seq., and 5 U.S.C. § 7702 (mixed cases involving whistleblower disclosures).

2. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because the Defendant agency is headquartered in Washington, D.C., and the unlawful administrative actions, employment practices, and retaliatory acts challenged herein occurred within this judicial district.

## II. ADMINISTRATIVE EXHAUSTION

3. Plaintiff has fully exhausted her administrative remedies. Plaintiff timely filed formal Equal Employment Opportunity (EEO) complaints of discrimination and retaliation against the Defendant agency.

4. On April 3, 2026, Plaintiff received the agency's Final Agency Decision (FAD), which explicitly included a notice of the statutory Right to Sue in United States District Court.

5. This Complaint is timely filed well within the ninety (90) day statutory limitation window from Plaintiff's receipt of the Final Agency Decision, satisfying all temporal and jurisdictional prerequisites under 42 U.S.C. § 2000e-5(f)(1).

6. Plaintiff previously filed a related appeal before the Merit Systems Protection Board (MSPB) regarding her forced deferred resignation, protected whistleblowing disclosures, and subsequent involuntary disability retirement, establishing a unified "mixed case" procedural layout under 5 U.S.C. § 7702.

6(a). Plaintiff further notes for the record that she is currently in the process of seeking formal legal counsel to pursue separate, distinct judicial transparency actions in the U.S. District Court to compel the disclosure of investigative files from the National Security Agency (NSA), Federal Bureau of Investigation (FBI), and the Office of Inspector General (OIG). Pursuant to 28

U.S.C. § 2401(a), Plaintiff maintains a six-year statutory window to file these distinct transparency and surveillance-related claims, and chooses to keep those investigations separate from the immediate, urgent adjudication of her employment discrimination and whistleblower retaliation remedies.

## III. PARTIES

7. Plaintiff, Olevia Bethune, is a resident of Washington, DC, and is a highly qualified senior auditor and oversight professional with over 25 years of federal service, including military service as an honorable veteran of the United States Navy.

8. Defendant Honorable Sean Duffy is the Secretary of the U.S. Department of Transportation, headquartered at 1200 New Jersey Avenue SE, Washington, D.C. 20590, and is sued in his official capacity as the representative of the federal government.

## IV. STATEMENT OF FACTS

9. Plaintiff served faithfully as a Senior Auditor within the U.S. Department of Transportation Office of Inspector General (DOT-OIG) from ~December 25, 2016 (her start date) through December 31, 2025 (her forced separation date).

10. In early 2023 (February), Plaintiff was assigned to the audit team managed by Ms. Patti Lehman. Shortly after assignment, Plaintiff observed and formally reported an unauthorized disclosure of protected health records (a structural HIPAA violation) by agency personnel and requested an immediate administrative transfer to a alternative team to ensure compliance.

11. Concurrently, Plaintiff experienced and opposed a series of hostile racial incidents and disparate treatment within the team, formally requesting administrative transfers on several occasions with doctor documentation supporting request as a mandatory accommodation.

12. The Defendant agency systematically denied Plaintiff's transfer requests to alternative audit teams on multiple occasions, providing no business or operational justification and leaving her trapped in a hostile environment. The Defendant agency dismissed Plaintiff's doctor's note supporting her request. (Please reference examples of doctor notes submitted Exhibit G)

13. In response to the unmitigated hostile work environment, Plaintiff exercised her statutory rights and initiated multiple formal EEO complaints alleging race/ medical discrimination and retaliatory reprisal.

14. As a direct proximate result of the severe, continuous race-based stress, disability discrimination, administrative hostility, and workplace trauma, Plaintiff's diagnosed medical conditions were profoundly aggravated, forcing her to take extended approved leave and periods of Leave Without Pay (LWOP).

15. While Plaintiff was out on approved Family and Medical Leave Act (FMLA) leave (~ August 2, 2024), under active physician's care and heavily medicated, Mr. Tuggle whom introduced himself to Plaintiff as Agency Counsel initiated an unauthorized telephone call to Plaintiff's personal line despite knowing she was on FMLA leave under doctor's care. During this call, Mr. Tuggle engaged in unlawful administrative coercion and gaslighting, attempting to pressure Plaintiff into signing an immediate termination of employment due to 'inability to work' clause for disability retirement, falsely presenting it as a benevolent measure to ensure she did not 'leave with nothing' while intentionally undermining her job security. (Please reference Exhibit D a true copy of evidence electronic mail from Mr. Tuggle dated August 5, 2024 with Agency approved settlement offer)

16. Distressed by this unauthorized coercive contact, Plaintiff frantically begged doctor for clearance letter to return to work and contacted management to determine if the agency was executing a fraudulent or retaliatory termination action against her.

17. Upon her immediate return (~August 2024), the agency's retaliatory campaign intensified. Ms. Lehman engaged in continuous administrative micro-harassment, threatening to mark Plaintiff as Absent Without Leave (AWOL) if Plaintiff did not respond to electronic or telephone communications within an arbitrary, highly restrictive 10-to-15-minute window.

18. Plaintiff subsequently filed an additional formal EEO complaint citing Mr. Tuggle's coercive and harassing communications as an intentional aggravation of her medical conditions and direct EEO reprisal.

19. Despite Plaintiff holding a formally approved Reasonable Accommodation status of permanent telework due to her severe anxiety and stress disorders, Ms. Lehman issued an administrative order compelling Plaintiff to physically report to the agency building.

20. Plaintiff explicitly communicated to management that reporting to the physical facility under hostile conditions caused debilitating anxiety and requested an administrative or security escort. The agency completely denied the protective escort.

21. Under direct threat of insubordination, on August 26, 2024 Plaintiff complied with the order, reported to the facility, and consequently suffered a severe anxiety-induced medical episode resulting in a physical fall, which medical professionals formally diagnosed as syncope (fainting). (Reference Exhibit F and Exhibit Fa reference Z)

22. Days following this physical injury, while Plaintiff was recovering at home, Ms. Lehman continued her pattern of micro-harassment, threatening Plaintiff with immediate

disciplinary write-ups if she failed to notify management within 15 minutes of an IT laptop delivery to her residence.

23. Management systematically isolated Plaintiff from essential project operations. Specifically, the entire audit team traveled to Texas for a critical report-writing session; management deliberately excluded and failed to invite Plaintiff via web link, telephone, or travel coordination. (Exhibit C)

24. Following this intentional exclusion, Ms. Lehman engaged in performance entrapment, issuing low-performance metrics against Plaintiff based entirely on her lack of awareness regarding operational decisions made during the very Texas session from which management had excluded her and a new assignment despite Plaintiff being ordered not to continue to email Ms. Lehman concerning though Plaintiff was given little to no scope on brevity of research of the new assignment which is a vital step of an audit supervisor; the assignment was also in a new, unlearned format.

25. During this period, Plaintiff's agency-issued laptop and home communication networks experienced highly unusual activity, unauthorized permission adjustments, and technological disruptions. Plaintiff forensically documented these anomalies and formally reported the unauthorized hardware/software glitches to management via email; management completely dismissed the security notifications without an audit.

25(a). Plaintiff explicitly states that additional documentary evidence, including internal agency emails between management, Human Resources, and leadership detailing these retaliatory acts, remains within the exclusive custody and control of the Defendant. The Defendant agency systematically confiscated Plaintiff's government-issued laptop and cut off her network access during the execution of the illegal DRP framework. Plaintiff intends to fully

recover these concealed communications and forensic electronic records through the formal discovery process pursuant to Federal Rules of Civil Procedure 26 through 37.

26. During her federal tenure, Plaintiff made protected disclosures under 5 U.S.C. § 2302(b)(8) regarding waste, fraud, abuse, and regulatory non-compliance observed in the course of her official auditing and oversight duties. Furthermore, Plaintiff reported on several occasions not feeling comfortable being coerced and forced to sign a Certificate of Independence when she reported on several occasions she was not independent as it required. (Exhibit A and in support of last sentence please reference Ca)

27. In late November 2024, management falsely informed Plaintiff she was being reassigned to a new, neutral audit team. Shortly thereafter (2-3 days later), on November 25, 2024 the agency abruptly placed Plaintiff on investigative leave, under the pretext of an undisclosed investigation (Exhibit E). However, days later, on February 6, 2025, Assistant Inspector General David Pouliott issued a formal Proposed Removal against her (Please reference first sentence of Exhibit A).

28. The Defendant agency explicitly weaponized Plaintiff's protected FMLA status and her history of filing multiple EEO complaints against her, presenting a conditional ultimatum: the agency would hold the removal in abeyance only if Plaintiff signed a Deferred Resignation Program (DRP) agreement. (Exhibit A and Exhibit A1).

29. As an explicit, illegal condition of the DRP, the agency required Plaintiff to waive, dismiss, and drop all active EEO complaints, civil service appeals, and whistleblower disclosures—a direct violation of federal whistleblower protections and public policy. Plaintiff frantically sought assistance from Agency Civil Rights Office, human resources and higher management up to Honorable Sean Duffy to stop the illegal action; she was ignored. Plaintiff

contacted her Congresswoman via email and reported the injustice through DOGE. As documented in an official Memorandum to Record dated March 27, 2025, signed by Deciding Official Charles A. Ward, the agency explicitly stated that if Plaintiff rescinded her participation in the DRP, the Proposed Removal and Final Decision would instantly restart where it left off, proving the DRP was executed under extreme administrative duress and constituted a constructive discharge. (A true copy of this March 27, 2025 Memorandum is attached hereto as Exhibit A and A1 the DRP document p4/5 line item 22;& examples of emails of Plaintiff seeking to stop the illegal threat condition of her employment and as a whistleblower of the Biden Administration Exhibit H).

30. Plaintiff attempted to escalate this systemic ethical and legal violation to higher management, including the Audit Office leadership, the Civil Rights Office, Human Resources, and ultimately Secretary Sean Duffy. The agency blocked all communication channels and completely refused to allow Plaintiff to lodge a formal administrative complaint (Exhibit H).

31. Following her forced separation, the agency's Human Resources department intentionally interfered with Plaintiff's statutory benefits. Throughout September and October 2025, HR withheld and failed to forward essential medical documentation provided by Plaintiff's treating physician, Dr. Greene, to the Office of Personnel Management (OPM) Disability Retirement Office (Exhibit I doctor surprised by initial OPM disapproval based on severity of her recommendation [not submitted by Agency HR]).

32. Simultaneously, HR engaged in administrative harassment, issuing a demand that Plaintiff pay approximately $12,000 to 'buy back' her honorable U.S. Navy military service time, using this financial demand to stonewall her retirement processing while ignoring her inquiries

regarding the missing medical documentation. On December 31, 2025, the agency processed a separation action under the fraudulent pretext that Plaintiff failed to buy back military time.

33. Plaintiff bypassed the agency's administrative block, directly appealed to OPM, and personally submitted the medical files that HR had withheld. Based on the true forensic medical record, OPM completely approved Plaintiff's Federal Disability Retirement in approximately March 2026, forensically proving that her medical restrictions were severe, permanent, and required the exact accommodations the agency previously refused to grant.

## V. CLAIMS FOR RELIEF

### COUNT I: Disability Discrimination and Failure to Accommodate

*(Rehabilitation Act of 1973, 29 U.S.C. § 791)*

34. Plaintiff re-alleges and incorporates paragraphs 1 through 33 by reference as if fully set forth herein.

35. Plaintiff is a qualified individual with a disability who could completely perform the essential functions of her position with reasonable accommodation.

36. Defendant discriminated against Plaintiff by intentionally failing to engage in the interactive process and denying her necessary accommodations, directly harming her health, livelihood, and federal career.

### COUNT II: Whistleblower Retaliation and Involuntary Constructive Discharge

*(Title VII, Rehabilitation Act, and 5 U.S.C. § 2302)*

37. Plaintiff re-alleges and incorporates paragraphs 1 through 36 by reference as if fully set forth herein.

38. Plaintiff engaged in protected activities by making whistleblower disclosures regarding agency non-compliance, reporting structural HIPAA violations, requesting reasonable accommodations, and filing formal EEO administrative grievances.

39. Defendant retaliated against Plaintiff by engineering a hostile work environment, attempting to suppress her forensic audit findings, and coercing her into a deferred resignation that explicitly conditioned her survival on dropping active statutory protections, resulting in an unlawful, involuntary constructive discharge of a senior whistleblower under extreme duress.

39(a). Plaintiff asserts that the full extent of the agency's administrative duress, coordinated bad-faith tactics, and retaliatory conditioning of the DRP can only be fully uncovered through a thorough judicial investigation and comprehensive depositions of the actors involved, as the available administrative record has been artificially restricted by the agency's structural blocking of Plaintiff's complaints.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against the Defendant, granting the following structural and equitable relief:

a. A declaratory judgment that Defendant's actions violated the Rehabilitation Act, Title VII of the Civil Rights Act, and the Whistleblower Protection Act;

b. An award of full back pay, with interest, and the total restoration of all standard retirement benefits, service credits, civil service steps, and health premiums;

c. An award of compensatory damages for emotional distress, physical pain, suffering, and intense administrative duress caused by the agency's actions;

d. An order directing the federal agency to forensically correct Plaintiff's personnel file (SF-50 records) to reflect an unlawful constructive discharge of a whistleblower rather than a voluntary separation; and

e. Any such other equitable, physical, and statutory relief as this Court deems just and proper under the law of the Land.

Dated: June 1, 2026

Respectfully submitted,

Olevia D. Bethune

**Olevia Bethune, Plaintiff Pro Se**
752 Gresham Pl. NW,
Washington, DC 20001
(202)271-2068
Olevia.Bethune@gmail.com